OPINION OF THE COURT
Herman Cahn, J.
*710 Petitioner moves for a declaration that respondent New York City Housing Authority’s (NYCHA) policy of refusing to permit remaining family members to appear at termination of tenancy proceedings violates 24 CFR 966.53; finding that the NYCHA’s failure to reopen the administrative default in this matter was a violation of petitioner’s due process rights under the Federal and State Constitutions; and finding that the NYCHA’s failure to reopen the administrative default was arbitrary and capricious.
Facts
Petitioner Veronica McLaughlin resided at apartment 12-B, 80 Dwight Street, Brooklyn, a NYCHA building. She lived there with her mother, Valerie Robinson, her two sons, sister and nephew, until their eviction. She lived in the apartment for 14 years, since the inception of the tenancy, and has always been listed on the appropriate forms as a resident of the apartment. The lessee of the apartment (the person in whose name the lease was made) was petitioner’s mother, Valerie Robinson. Petitioner alleges that Robinson abandoned the apartment without formally notifying the NYCHA housing manager.
Robinson failed to submit annual recertification forms to NYCHA for several years. She allegedly provided an income affidavit and some supporting income information to the housing manager on July 16, 2002.
NYCHA commenced a “termination of tenancy” proceeding against Robinson, by notice dated January 3, 2003. The notice stated that Robinson’s tenancy was being terminated for non-verifiable income and breach of agency rules, in connection with her failure to provide sufficient income information in 2002.
Petitioner maintains that Robinson failed to respond to the notice of termination, because she had abandoned the apartment, and, thus, had presumably not received the notice. A hearing was held at NYCHA, and the hearing officer terminated the tenancy, on default, by decision and disposition dated January 22, 2003. The default was entered bn February 12, 2003. Petitioner contends that she was not aware of the termination until she found a petition in a Housing Court holdover proceeding directed to her mother, relating to a holdover proceeding that NYCHA had commenced against Robinson. McLaughlin and her mother appeared in court, pro se, in April 2003.
Robinson asserts that she was told “that in order to prevent the family’s eviction, she would have to apply to reopen her default at an administrative hearing at 250 Broadway.” (Peti *711 tion ¶ 21.) The Housing Court proceeding was adjourned until May 28, 2003 to enable her to do so. Robinson failed to make the application, and McLaughlin was allegedly told that she could not apply to reopen the default, because she was not the head of household.
Robinson failed to appear in court on May 28, 2003, and a default judgment was entered in favor of the NYCHA. McLaughlin claims that she did not appear in court on May 28, 2003 because she had been told repeatedly by the Housing Authority’s rental management office that she could not appear because she was not the head of household, and the proceedings were not in her name.
On August 1, 2003, petitioner was evicted. She then moved in the Housing Court to be restored to possession. Based on her representation that she was “on the lease,” the court ordered that she be restored to possession pending a hearing on the motion. On August 6, 2003, petitioner’s motion was denied, because she was not named as a tenant on the lease, and had never applied for tenancy as a remaining family member. Execution of the warrant of eviction was stayed through August 20, 2003.
On August 7, 2003, petitioner attempted to file a “remaining family member” grievance with NYCHA. She was allegedly told that, because the tenancy had been terminated, she could not file the family member grievance. She then wrote to the chairman of NYCHA. She received a written response, dated August 25, 2003, stating that she could not request a remaining family member grievance, because her mother’s tenancy had already been terminated.
On August 26, 2003, petitioner moved to renew and/or reargue the earlier motion, to vacate the default judgment entered on May 28, 2003, or to stay execution of the warrant so that she could file a remaining family member grievance with NYCHA. The Housing Court denied that motion on October 15, 2003, on the ground that it did not have power to overturn an administrative determination. The execution of the warrant was stayed until November 28, 2003, to allow petitioner to file a CPLR article 78 proceeding with this court.
By letter dated September 10, 2003, petitioner attempted to reopen the February 12, 2003 default, i.e., the default before the NYCHA hearing officer. Petitioner’s application was denied, with the hearing officer stating that a residual tenancy claim is different from a defense to termination of tenancy, and must be initiated by a grievance procedure.
*712 By the instant petition, petitioner seeks to stay the Housing Court proceeding. However, this court did not grant petitioner a temporary restraining order, and she has since again been evicted. NYCHA has offered the apartment to another family on its waiting list, but has been enjoined from reletting the apartment pending determination of this motion.
Discussion
Petitioner contends that NYCHA violated federal law by failing to allow her to assert her claim to remaining family member status in the administrative termination of tenancy proceedings. According to petitioner, NYCHA permits only tenants whose names are on the lease to appear at a “termination of tenancy” hearing, even though that policy is not set forth in its own Management Manual. She argues that this conflicts with federal regulations, in which grievances are described as the forum in which a tenant can contest proposed termination of tenancy (except where the tenancy is being terminated for drug-related activity). The tenant who is entitled to file a grievance is the person “[w]ho resides in the unit, land who executed the lease with the PHA ... or, if no such person now resides in the unit, [the person] [w]ho resides in the unit, and who is the remaining head of household of the tenant family residing in the dwelling unit.” (24 CFR 966.53 [f].) ,
Petitioner acknowledges that NYCHA permits remaining family members to file grievances to assert their right to succeed to a tenant’s lease. However, she contends that, by not permitting remaining family members to do so after a proceeding to terminate is initiated, NYCHA undermines the federal regulations, which anticipate that remaining family members will be able to present their claim at the termination hearing. Petitioner also argues that by not being permitted to be heard, she was denied due process under the Fourteenth Amendment of the United States Constitution.
Petitioner claims that she has a reasonable excuse for the default, having been told by the rental management office that she could not appear in the underlying action. She also contends that she has a meritorious defense, based on her mother’s leaving the apartment, which should have resulted in her being allowed to intervene in the administrative proceeding.
NYCHA maintains that petitioner has not demonstrated that she was denied any rights. Before she can claim a right as a “remaining head of household,” pursuant to the federal regulation, petitioner must demonstrate that the person who executed *713 the lease no longer resides in the unit. Here, NYCHA contends that there is no evidentiary showing that Robinson vacated the apartment. Not only is there no letter of intent to vacate, but Robinson appeared with respect to this matter on three separate occasions, and did not, at any time, state that she had left or was planning to leave the apartment. Petitioner, who appeared with Robinson in Housing Court, never asserted a claim as the remaining head of household, nor did she seek to obtain status as a remaining family member until after the tenancy was terminated. The Housing Authority further points out that the tenant of record is responsible for maintaining the tenant relationship with his or her landlord. Robinson’s failure to do so, and petitioner’s failure to attempt to initiate any such contact until after the tenancy was terminated is not attributable to any wrongdoing on NYCHA’s part. Consequently, NYCHA argues, petitioner has failed to demonstrate that there was anything improper in NYCHA’s actions, and has not demonstrated any entitlement to the relief requested.
NYCHA fails to take into account that much of what it terms petitioner’s failures may have resulted from her not being informed of the status of the proceedings. Petitioner was apparently never informed of Robinson’s default, or of the Housing Authority’s action to terminate the tenancy. Thus, she was not in a position to challenge the termination of tenancy until after it occurred. Nor, apparently, was petitioner ever provided with an opportunity to demonstrate that Robinson had left the premises. By the time petitioner was made aware of the problem, the tenancy had already been terminated. At that point, there was no tenancy to succeed to. (Figueroa v Hernandez, 194 Misc 2d 413 [Sup Ct, NY County 2002].)
Where private housing is involved, as opposed to housing under the auspices of NYCHA, the dismissal of a proceeding is mandated where a person found to be a necessary party has not been named or served with the petition. (Westway Plaza Assoc. v Doe, 179 AD2d 408 [1st Dept 1992].) A legal occupant of an apartment, even if not a named tenant, may acquire possessory or tenancy rights that are subject to rent regulation, and may, thereby, become a necessary party to a summary eviction proceeding. (420 Riverside Owners Corp. v Ettinger, 2002 NY Slip Op 50414[U] [Civ Ct, NY County 2002], affd 196 Misc 2d 107 [App Term, 1st Dept 2003]; Stanford Realty Assoc. v Rollins, 161 Misc 2d 754 [Civ Ct, NY County 1994].) Here, NYCHA contends that it has complied with the requirements of notice to *714 Robinson (see consent decree in Escalera v New York City Hous. Auth., 67 Civ 4307, SD NY 1971), and, therefore, does not have to provide petitioner with notice.
Escalera arose from NYCHA’s implementation of procedures which resulted in people being evicted from their apartments without necessarily knowing the charges against them, or being able to adequately defend themselves against anonymous accusers. (Escalera v New York City Hous. Auth., 425 F2d 853 [2d Cir 1970], cert denied 400 US 853 [1970].) The focus of Escalera was not the issue of who is entitled to receive notice, and under what circumstances, but rather, the sufficiency of notice. In fact, the consent decree does not attempt to define who is a “tenant” at all. Nonetheless, the consent decree in Escalera, which was entered into approximately 30 years ago, is the basis for NYCHA’s current practices. It is ironic that the Escalera consent decree, which was intended to protect tenants’ rights, is now being used to deny Housing Authority residents’ rights which are available to other tenants, including those in rent-stabilized and rent-controlled apartments in the private sector.
NYCHA contends that petitioner is not a tenant, and therefore has no standing to challenge the administrative determination. However, this ignores the fact that petitioner, who may well have a possessory interest in the apartment, was never given the opportunity to demonstrate that she was, in fact, a tenant pursuant to 24 CFR 966.53 (f). Nor has NYCHA offered any basis upon which to justify a procedure which can, and in this case does, result in a legal resident of an apartment having no recourse to defend against an application to remove her from the premises, even though she has not been charged with any wrongdoing. Petitioner was, in essence, told that if her mother did not act responsibly, she, together with the remainder of the family, must pay the price by being evicted, even though she was, apparently, paying rent. McLaughlin was never given the opportunity to appear before NYCHA to try to demonstrate that her mother abandoned the premises, i¡mtil after the tenancy was terminated. At that point, according to the NYCHA rules, there was nothing that could be done.
Federal regulations mandate that a tenant be able to contest proposed termination of tenancy except where the tenancy is being terminated for drug-related activity. (24 CFR 966.4 [l] [3] [iv]; 966.51.) A tenant is defined as the remaining head of household of the tenant family residing in the dwelling unit, if the person who executed the lease no longer resides there. There *715 is no formal notification requirement set forth in the regulations. (Id.)
Here, according to petitioner’s verified petition, petitioner qualifies as a tenant under 24 CFR 966.53 (f). According to her sworn statement, petitioner is the remaining head of household of the tenant family, since her mother, Robinson, abandoned the apartment. While NYCHA contends that petitioner has failed to prove this, petitioner’s sworn statement is evidence of that departure, and NYCHA has not submitted any proof or even indication of Robinson’s continued residence. While NYCHA expresses concern about adjudicating this matter without any notice by Robinson establishing that she has left the apartment, her failure to appear can result in her losing her right to continue in the apartment. It should not, however, result in petitioner and her family losing their rights to occupy the apartment without an opportunity to be heard.
Further, NYCHA’s reliance on cases involving remaining tenants who were not in the apartment legally (see e.g. Matter of Henderson v Popolizio, 76 NY2d 972 [1990]) is not comparable to the instant case, where petitioner has been listed as a resident of the apartment since the tenancy’s inception.
Having been a legal resident of the apartment, petitioner was entitled to notice of a termination proceeding that would affect her and her family before it occurred. The fact that this proceeding involves NYCHA, rather than a private landlord, does not lessen the notice obligation. Further, in order to have any value, notice to petitioner would have to be given prior to the termination proceeding. Since NYCHA maintains records that include the names and ages of the residents of its apartments, such notice should be given to those residents. Providing notice to such persons would not be onerous.*
By terminating Robinson’s tenancy, without giving notice to petitioner, NYCHA violated the federal mandate. Therefore, NYCHA’s determination to terminate the tenancy without providing prior notice to petitioner, and refusal to permit petitioner to reopen that determination, is arbitrary and capricious, and in violation of governing law. (See Mullane v Central Hanover Bank & Trust Co., 339 US 306 [1950] [an elementary and fundamental aspect of due process is to give all interested parties notice and an opportunity to be heard].)
*716 Conclusion
Accordingly, it is ordered and adjudged that the petition is granted and the matter is remanded to the New York City Housing Authority to reopen the administrative default in the termination of tenancy proceedings and allow petitioner to present her claim to remaining head of household status; and it is further ordered that the injunction restraining the respondent Housing Authority from reletting ihe subject apartment continues until 15 days after petitioner is served with a copy of the new administrative determination by the Housing Authority.

 If a squatter or person occupies the apartment without the Housing Authority having received notice thereof, it would not be required to give notice of a termination proceeding to such person.